ESTATE OF FAATENI SWEET, DECEASED.

[No. 8189; decided August 3, 1893.]

**Succession—Conflict of Laws.**—The law of the domicile of a deceased person governs the succession to his personal property.

**Marriage Contract—Conflict of Laws.**—A marriage contract is to be construed according to the law where it is made and executed.

**Marriage Contract—Conflict of Laws.**—The whole of the foreign law is adopted in a marriage contract under the lex loci contractus, except the remedy, and the actual intention is to be interpreted according to that law.

**Domicile is the Place Whence a Person Goes for Labor or Other** temporary purpose and whither he returns in season of repose. It is the place where a person has his home, or his principal home, or where he has his family residence and personal place of business; that residence from which there is no present intention to remove or to which there is a general intention to return.

**Domicile.—The Acts and Conduct of a Person** are more conclusive in determining his domicile than are his declarations.

Application for distribution.

T. J. Lyons and Geo. B. Merrill, for next of kin.

P. F. Dunne, J. J. Dunne and H. C. McPike, for Israel Sweet, surviving husband.

COFFEY, J.   This controversy is most interesting and intricate, and it has been conducted with consummate ability by respective counsel.   Their arguments were not only long, but learned, and their pleadings and briefs have been of great service to the court by reason of their speaking fully to every point of the discussion.

It would be difficult to conceive how counsel on either side could more exhaustively explore the domain of legal learning pertinent to the issues involved in the cause, and although the zeal and ardor of some of them have been tempered by a tinge of asperity, their efforts on the whole will without doubt tend ultimately to the securement of exact justice—the end of all litigation.

There are three propositions presented on the part of the alleged next of kin: 1. The marriage contract and its effect

and rule; 2. The lex loci contractus and its application; 3. The lex domicilii governing succession to personalty.

A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made: Civ. Code, sec. 1646.

I am of opinion that the marriage contract rules this case, and provides for the succession to the estate; that it determines the mutual relations of the parties to it; and that from the point of view of French law which was dominant Israel Sweet had no right to the succession of his deceased wife. The natural legal presumption is that the marriage contract takes the place of the law. It establishes the condition of the parties to it. It is their agreed condition. The question of succession belongs to the forum of domicile.

"The law of the domicile of a deceased person governs the succession to his personal property."

A marriage contract is to be construed according to the law where it is to be made and is to be executed.

The real intention of the parties is to be sought. Common sense furnishes a rule of interpretation—and that which is repugnant to such a rule should be rejected. These are abstractions and need application. The whole of the foreign law is adopted into the contract under the lex loci contractus, except the remedy, and the actual intention is to be interpreted according to that law; the law of the place where the marriage contract was executed governs; and this case is controlled entirely by the marriage contract, and Israel Sweet was and is bound by the specifications of that contract to which he was and is a party.

As to the domicile of Israel Sweet—I do not think it has been disturbed by the very ingenious argument of his counsel, and to that argument I paid close attention in its oral presentation, and have read with great care and, I trust, intelligent interest, their admirable memorandum of points and authorities (one hundred and twenty-two pages), so clearly and logically setting forth their views.

While I feel constrained to disagree with counsel for the surviving husband, in my final survey of the situation, candor compels me to confess that for a time I was almost persuaded

to agree with them; and, perhaps now, it is my limited intelligence and my incapacity to take more than a finite view of things terrestrial, that causes me to differ from their conclusions; but I cannot refrain from alluding to the scientific manner in which they have presented their case—so satisfactory to a judge who is necessitated to take so many matters under advisement; and this is said with the due credit and distinction to the opposing counsel whose labor and learning deserve recognition.

I am of opinion that Israel Sweet's domicile, as determined by his conduct, was in Tahiti; "actions speak louder than words"; he left Connecticut in 1849 and never again set foot on the shores of the Sound—never returned to that state; going to the Pacific Islands as early as that year. He may have had "a floating intention to return," but that does not count, according to authority, as to domicile. What is *domicile?* The best and most concise definition we have met with is: The place whence a person goes for labor or other temporary purpose and whither he returns in seasons of repose. The dictionarians agree that, in law, it is the place where a person has his home, or his principal home, or where he has his family residence and personal place of business; that residence from which there is no present intention to remove or to which there is a general intention to return.

Our own Political Code, section 52, furnishes a rule and definition.

Israel Sweet's conduct as affecting his domicile is important to be considered. His acts were and are more conclusive than his declarations; his present claim is inconsistent with his past conduct. There is no evidence that he ever from 1880 to 1888 declared any intention to change his domicile from Tahiti. During eight years he never indicated an inclination to change his abode. It is clear that until the death of his wife, Faateni, he held to the purpose of retaining his residence in the islands; he cannot fix his domicile by a declaration after the fact. In 1882 he made a lease for twenty years, yet he now pretends that he had intended to leave in 1880; his acts and those of his wife were all indicative of domicile in Tahiti. The finding of the court in Tahiti that Sweet was domiciled there, No-

vember 26, 1887, is worthy of weight—if not conclusive and unassailable. It seems to fix that fact upon that date.

In considering Sweet's testimony as to the lease, it is hard to understand why a man should take so long a lease in a place where he did not intend to locate his domicile; his explanation is far from satisfactory. All the facts show, it seems to me, that he had selected Tahiti as his domicile.

I am of opinion that the persons here claiming to be next of kin have established their right in that regard, by ample evidence, deposition and record, and are entitled to judgment as prayed for in their original and supplemental petitions for distribution of the estate to the exclusion of Israel Sweet, surviving husband and petitioner herein; and that the contention of counsel for next of kin as to the law applicable in the premises is sound.

Let findings and decree be drawn accordingly, and presented for settlement and signature.